# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1460-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDDIE V. DAVIS,

    Defendant-Appellant.

_____

Submitted November 4, 2021 – Decided November 24, 2021

Before Judges Hoffman, Whipple, and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-07-2234.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira Scurato, Designated Counsel; Michele A. Adubato, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Sarah C. Hunt, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Eddie V. Davis appeals the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. For reasons that follow, we affirm.

I.

Defendant was convicted by a jury of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); and third-degree aggravated assault, N.J.S.A. 2C:12-l(b)(7). He was acquitted of aggravated sexual assault, N.J.S.A. 2C:12-1(b)(1). On the second-degree sexual assault conviction, defendant was sentenced to ten years imprisonment with eighty-five percent parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He was sentenced to a consecutive term of five years imprisonment with a two-and-one-half year period of parole ineligibility for the third-degree aggravated assault conviction.

Defendant filed a direct appeal. We affirmed his conviction and sentence in an unpublished opinion. State v. Davis, No. A-5092-15 (App. Div. Jan. 16, 2018) (slip op. at 3, 13). The Supreme Court denied his petition for certification. State v. Davis, 233 N.J. 615 (2018).

The facts underlying defendant's convictions are set forth in our prior opinion, which we briefly relate here:

> At trial, C.J. provided [the] following testimony.
> C.J. explained that she and defendant had an "off and

A-1460-19

on" romantic relationship from 2012 until 2014. After the relationship ended, C.J. allowed defendant to remain living in her home because he had nowhere else to stay.

On the evening of February 7, 2014, C.J. visited her brother and returned home at approximately one o'clock in the morning; upon returning home, defendant grabbed her arm and forced her into the living room where she fell. Defendant proceeded to punch C.J. "a couple times" in the face, causing her to bleed from the mouth and nose. Defendant then began choking C.J., digging his fingernails into the back of her neck, while forcing her into the bedroom and continuing to hit her. C.J. tried to tell defendant to stop and to fight him off, but defendant continued beating her.

When in the bedroom, defendant threw C.J. to the floor and kicked her; he then picked her up from the floor and threw her on the bed. Defendant proceeded to have nonconsensual vaginal intercourse with C.J. Afterward, defendant would not allow C.J. to go to the bathroom to clean up. C.J. asked defendant to let her go to the hospital, but he refused and would not let her leave the bed for the rest of the night. The following day, defendant did not go to work and instead stayed with C.J., preventing her from leaving the home or calling anyone. Defendant told C.J. he did not want her to go to the hospital because she would have him "locked up."

The following day, defendant went to work. After he left, C.J. showered and cleaned herself up, and then called 9-1-1. Police arrived and an ambulance took C.J. to the hospital. At the hospital, a Sexual Assault Nurse Examiner (SANE), Mary Lou Kline, examined C.J.

3

[Davis, slip op. at 3.]

Defendant filed a pro se PCR petition in August 2018.  He was assigned counsel.  An amended PCR petition was filed on his behalf on June 5, 2019. The amended PCR petition argued defendant's trial counsel was ineffective for "[a]llowing testimony to be admitted that [defendant] was a ten time repeat offender, meaning that he had nine prior domestic violence offenses, when this information served no strategic purpose other than to cause undue prejudice to [defendant]."  It also alleged ineffective assistance for "[f]ailing to request a jury instruction that prior inconsistent statements made by [C.J.] were admissible as substantive evidence."

On October 11, 2019, the PCR court denied defendant's PCR petition.  It also granted defendant's request to withdraw his previously filed pro se brief. The PCR court rejected defendant's argument about his trial counsel's failure to request a specific jury instruction.  The court held this argument was procedurally barred under Rule 3:22-5 and State v. Afanador, 151 N.J. 41 (1997), because it was "substantially the equivalent issue that was raised before the Appellate Division that was already litigated and ruled on."  The PCR court also rejected defendant's claim his trial counsel provided ineffective assistance

A-1460-19

by inquiring into prior domestic violence filings because this was done for "strategic purposes" and was "basically or virtually, unchallengeable."

Defendant appealed the October 11, 2019, order. On appeal, defendant raises these issues:

POINT I

DEFENDANT'S PCR CLAIMS WERE NOT PROCEDURALLY BARRED BY R. 3:23-5.

POINT II

THE PCR COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.

A. LEGAL PRINCIPLES.

B. COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A JURY INSTRUCTION THAT THE PRIOR INCONSISTENT STATEMENTS OF THE VICTIM COULD BE USED AS SUBSTANTIVE EVIDENCE.

C. COUNSEL'S INTENTIONAL ELICITATION OF GROSSLY PREJUDICIAL TESTIMONY REGARDING PRIOR DOMESTIC VIOLENCE OFFENSES.

A-1460-19

D. FAILURE OF PCR COURT TO CONDUCT AN EVIDENTIARY HEARING.

II.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). In order to prevail on an ineffective assistance of counsel claim, defendant must meet a two-prong test by establishing: (l) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

Our review of the PCR court's findings of fact is deferential. State v. Pierre, 223 N.J. 560, 576 (2015). We "uphold the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). The PCR court's interpretation of the law and legal conclusions are reviewed de novo. Id. at 540-41.

A-1460-19

A.

Defendant argues the PCR court erred in deciding he was barred from claiming post-conviction relief on the ground that his attorney provided ineffective assistance by not requesting a jury instruction to consider prior inconsistent statements as substantive evidence. We do not agree this was an error.

In his direct appeal, defendant argued the jury charge was not complete because the court did not provide the jury with an instruction about the use of prior inconsistent statements as substantive evidence. Davis, slip op. at 5. He claimed there were inconsistencies in testimony by the State's witnesses. C.J. claimed she was sexually assaulted but she did not mention this when she first called 9-1-1. Id. at 7. He claimed "C.J. gave conflicting testimony about how much she drank in the hours before the incident." Id. at 8. Defendant contended Nurse Kline's testimony and report were not consistent about bruising on C.J.'s neck and the length of time C.J. claimed she was strangled by defendant. Ibid.

In the direct appeal, we found there was "no error, much less plain error, in the omission of the jury charge regarding the use [of] prior inconsistent statements as substantive evidence." Id. at 9. We noted "[t]he trial court instructed the jury on using prior inconsistent statements in evaluating

7

credibility. . . ." Ibid. We found that what defendant claimed were inconsistencies "were minor inconsistencies lacking 'any significant substantive exculpatory value.'" Ibid. (quoting State v. Hammond, 338 N.J. Super. 330, 343 (App. Div. 2001)). We determined the omission "did not have a 'clear capacity to bring about an unjust result,' because the instruction would have only assisted the jury in fact-finding, rather than aid in explaining the law." Id. at 9 (quoting State v. Singleton, 211 N.J. 157, 183 (2012)).

Rule 3:22-5 provides that "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings." "Preclusion of consideration of an argument presented in post-conviction relief proceedings should be effected only if the issue raised is identical or substantially equivalent to that adjudicated previously on direct appeal." State v. Marshall, 148 N.J. 89, 150 (1997) (quoting State v. Bontempo, 170 N.J. Super. 220, 234 (Law Div. 1979)).

Defendant argues the issue in the PCR appeal is different because the PCR petition concerned his counsel's performance at trial while the direct appeal concerned whether the trial court erred. Defendant claims he was prejudiced by

his trial counsel's failure to ask for this instruction because the plain error standard rather than the reversible error standard was applied in evaluating the direct appeal. Defendant does not cite any new examples of inconsistency from those raised in the direct appeal.

Under Hammond, we considered the jury instruction regarding prior inconsistent statements of witnesses used as substantive evidence. 338 N.J. Super. at 339. We rejected its application there because the out-of-court statements "lack[ed] any significant substantive exculpatory value that is pertinent to the jury instructions whose omission defendant challenges." Id. at 343. In that case, the witnesses disavowed any knowledge of the incident in their out-of-court statements. However, at trial, they testified about the details of the incident. The court found this inconsistency "went solely to the issue of credibility," and that "they had no substantive exculpatory value of their own that is relevant to the jury instruction on prior inconsistent statements of witnesses." Ibid. In Hammond, the issue was about credibility, and the jury had been fully instructed on that issue. We found the jury could determine the credibility of the witnesses "with no less capacity than if it had been instructed that it might consider as substantive evidence the witnesses' original denials of any knowledge of the crime." Ibid.

9

Here, the inconsistencies also implicated the witnesses' credibility. The trial court fully instructed the jury about credibility, including its use of prior inconsistent statements in evaluating a witness's credibility. The fact that C.J. may have had more to drink than first reported or did not immediately mention the sexual assault in the 9-1-1 call, or that the nurse's report did not mention bruising on the neck, were all facts that were before the jury. Our prior opinion found these inconsistencies to be minor. Davis, slip op. at 9. We also found they did not have significant exculpatory value. Ibid. Therefore, the same inconsistencies were evaluated, and we found the same omitted instruction did not bring about an unjust result. The issue here is substantially the same as in the direct appeal. The PCR court did not err in barring it under Rule 3:22-5.

We are confident in the same outcome even if Rule 3:22-5 did not apply. Given the minor nature of the inconsistencies, which lacked exculpatory value, counsel's performance by not requesting this instruction was not so deficient as to implicate the first prong of Strickland, nor did defendant demonstrate he was prejudiced because the jury was fully instructed on the use of prior inconsistent statements in assessing witness credibility.

A-1460-19

B.

Defendant argues the PCR court erred by denying his post-conviction petition because trial counsel elicited prejudicial testimony about prior domestic violence incidents by defendant against C.J. We agree with the PCR court in rejecting this claim.

In the trial, defense counsel asked Officer Robert Schwartz of the Camden County Police Department, whether he had done a check of the "RT-TOIC"[1] regarding defendant. The officer responded he was advised defendant "was a ten-time repeat offender, which mean[t] that he had nine prior domestic violence offenses." Shortly after this answer, the trial court asked counsel if he wanted a limiting instruction, which he declined, explaining "it was [his] intention to bring that out at some point . . . [and] that's not an oversight on our part." The limiting instruction issue was raised again by the trial court when defendant advised he was seeking to put C.J.'s "domestic history" before the jury. Referencing prior applications by C.J. for restraints against defendant, counsel argued:

> Because not only were they denied in some instances,
> in many instances she withdrew the applications before
> she ever had her FRO hearing. Sometimes she didn't

---

[1] The acronym refers to the "Real Time Tactical Operations and Information Center."

A-1460-19

show up at the FRO hearings. There is a pattern of using restraining orders as a means to get my client to comply to her expectations of behavior and conduct.

The trial court determined that if this type of testimony were elicited, "[t]he [S]tate can certainly then bring in testimony to rebut an accusation or an inference of filing false accusations to show the basis and the reasons why those temporary restraining orders were not pursued." It was shortly after this ruling that defense counsel advised defendant no longer wanted "to pursue that line of questioning with the alleged victim," and requested a limiting instruction. The trial court read this instruction to the jury after the State rested:

> I note that during the trial you heard testimony from Officer Schwartz, whereby he stated that the defendant was a ten[-]time repeat offender, which means he had nine prior domestic violence offenses. I instruct . . . each of you that you are to totally disregard that portion of Officer Schwartz['s] testimony. That means you cannot consider that portion of his testimony for any reason and it cannot be considered for any purpose during your deliberations. There is no evidence that these offenses were ever proven or even occurred.

The trial court read the same instruction to the jury as part of the jury charge.

Under the first part of <u>Strickland</u>, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]' [and t]o rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" <u>State v.</u>

Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689). "If counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually unchalleng[e]able.'" State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690–91).

Defendant's strategy was to show C.J. was not truthful because she had a pattern of accusing defendant of domestic violence and then not following up on those allegations. He intended to pursue this strategy until the trial court ruled he would be opening the door to evidence about the other domestic complaints. We cannot say that a strategy to weaken C.J.'s credibility was per se unsound. This case centered primarily on C.J.'s credibility. The fact a trial strategy fails to obtain the optimal outcome for a defendant is insufficient to show counsel was ineffective. State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)).

Defendant also failed to show he was prejudiced by the statement. The comment by Officer Schwartz was isolated. The trial court's curative instruction told the jury to disregard the officer's testimony. We must assume the jury followed these instructions and disregarded the evidence. See State v. Loftin, 146 N.J. 295, 390 (1996) (noting "[t]hat the jury will follow the instructions given is presumed"). Moreover, the instruction went beyond advising the jury

to disregard the testimony. It advised there was no evidence the facts were proven or existed. We, therefore, agree with the PCR court's evaluation that there was nothing which showed the result of the case would be different if this information were not before the jury.

## C.

We are satisfied from our review of the record that defendant failed to make a prima facie showing of ineffectiveness of trial counsel within the Strickland-Fritz test. Accordingly, the PCR court correctly concluded that an evidentiary hearing was not warranted. See State v. Preciose, 129 N.J. 452, 462-63 (1992) (providing "trial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of post-conviction relief").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1460-19